UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| LINDA W. BACK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-05 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| KEITH A. HALL, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The defendant, Keith A. Hall ("Hall"), filed a motion for summary judgment, R. 89, to which the plaintiff, Linda W. Back ("Back"), responded in opposition, R. 98, and Hall filed a reply in support, R. 99. Back sued the defendants under 42 U.S.C. § 1983, alleging that they fired her based on her political affiliation in violation of the First (and Fourteenth) Amendment. R. 1 at 10. Since Back failed to establish a prime facie case of political affiliation discrimination against Hall, Hall's motion for summary judgment must be granted. *See Conklin v. Lovely*, 834 F.2d 543, 546-47 (6th Cir. 1987).

## BACKGROUND

This story begins in 2003. In December 2003, Republican Ernie L. Fletcher became Kentucky governor replacing Democrat Paul E. Patton. At that time, the plaintiff, Back, was a grants and contracts administrator for the Kentucky Office of Homeland Security ("KOHS"). R. 89, Ex. 4 ("Back Dep.") at 8-9. Her job was to help Kentucky entities get funding from the United States Department of Homeland Security. *Id.* She worked under Ray A. Nelson until March 2004, when Erwin Roberts became the Executive Director of KOHS. *Id.* at 10. Under

Roberts, Back trained new employees and maintained responsibility for processing and administering the agency's federal homeland security grant applications. *Id.* at 12-13.

In April 2004, the defendant, Joel Schrader, became the Deputy Director of KOHS and Back's supervisor.[1]  *Id*. at 25; R. 89, Ex. 3 ("Hall Dep.") at 6.  According to Back, under Schrader, political affiliation appeared to be a determining factor in how grants were awarded, including grants to Jefferson County.  Back Dep. at 117-18.  She was instructed—without any explanation—not to talk to the Homeland Security representative from Jefferson County. *Id.* at 118.  This instruction concerned Back because it made it hard for her to manage Jefferson County's grants. *Id.* at 118-19.  She does not know what happened with those awards since she was terminated shortly thereafter. *Id.* at 119.

While working for Schrader, Back believed that political affiliation became part of the hiring practices at KOHS. *Id.*  According to Back, Schrader asked applicants about their political affiliation and whether they supported the "Governor's agenda." *Id.*  Additionally, Back testified that job applications sent from the Governor's office asked applicants to identify whether they were Democrats or Republicans. *Id.* at 120.

In September 2004, Back resigned from her position and accepted a promotion to Internal Policy Analyst, which included a six-month probationary period. *Id.* at 53-54.  Larry Clarke, a Staff Assistant at KOHS, informed Schrader and others making the promotion offer to Back that

---

[1]Schrader filed a separate motion for summary judgment on February 1, 2010. *See* R. 101.  The Court will rule on his motion when it becomes ripe.  The facts relating to Schrader are only mentioned here to the extent that they affect Hall's motion for summary judgment.

she would be put on an initial probation period. R. 89, Ex. 1 ("Clarke Dep.") at 8.[2] In her new role, Back managed about twenty grants. Back Dep. at 56-57.

In November 2004, Fletcher appointed Hall to be the Executive Director of KOHS. Hall Dep. at 4-5. Back reported to Schrader, and Schrader reported to Hall. *Id.* at 6. In January 2005, Susan Wilkerson, a grants manager at KOHS, and Schrader told Hall that Back was not performing up to their standards, in part because she was taking a long time to do her work. *Id.* at 6-7.[3] Apparently, Back did not complete the paperwork necessary for an audit by the United States Department of Homeland Security on time so others had to stay late to help her finish the paperwork. *Id.* at 10.

Hall contacted Clarke, as a veteran state employee, to get his advice about what should be done about Back's employment. *Id.* at 7-8. Clarke, a Democrat, testified that it was normal for Hall to complete an evaluation of Back since her probationary period was ending in March 2005. Clarke Dep. at 21-22. Hall spoke with Clarke, Schrader, and Wilkerson about what should be done.[4] Hall Dep. at 11. Clarke stated that only the Secretary of Finance had

---

[2]Back objects to Clarke's statement that Back was informed that her "right [as a] merit employee" would be gone if she resigned. R. 98 at 3-4. In his motion, Hall is not arguing that Back lost her right to be free from political affiliation discrimination because she was on probation. Thus, Back's objection is not relevant to this motion.

[3]The deposition transcripts state that this discussion took place in January 2004. However, this is in error since the parties agree that Hall did not even become the Executive Director of KOHS until November 2004. For the purposes of this motion, it is assumed that this discussion took place in January 2005 before Back's termination.

[4]Back disputes the credibility of Clarke and Wilkerson's testimony. R. 98 at 5-8; 10. Specifically, she argues that neither Clarke nor Wilkerson had supervising authority over her. *Id.* at 5. Further, she contends that neither had knowledge of Back's work to comment on her performance. *Id.* at 5-6. Because none of these arguments show that Hall knew Back was a

the authority to terminate Back. *Id.* at 11. Hall instructed Clarke to get the Secretary's advice. *Id.* Clarke met with Jamie Link, the Executive Director in the Finance Administration Cabinet. Clarke Dep. at 25-26. Link's staff prepared Back's termination letter. *Id.* at 26. Clarke gave Hall the letter and advised him to set up a meeting with Back and Schrader to deliver the letter. *Id.* at 26-27.

On January 19, 2005, Schrader informed Back that Hall wanted to see her in his office later that day. Back Dep. at 64. At the meeting, Hall informed Back that she was being terminated and Schrader handed her the termination letter. *Id.* at 65.

On January 17, 2006, Back filed this lawsuit. *See* R. 1. In previous opinions, the Court dismissed most of her claims and some of the original defendants. *See Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008) (stating the procedural history of this case). Only Back's political affiliation claims against Hall and Schrader remain in this case. *Id.* Back alleges that Schrader and Hall terminated her because she is a Democrat, and thus, violated her First Amendment rights. *See* R. 1.

On October 16, 2009, Hall filed his motion for summary judgment. *See* R. 89. On December 1, 2009, Back filed a response to Hall's motion, R. 98,[5] to which Hall filed a reply,

---

Democrat or that her Democratic affiliation was a substantial or motivating factor in his decision to terminate Back, they do not alter the Court's decision here. These argument are addressed later in this opinion.

[5]In her response, Back asks the Court to reserve ruling on Hall's motion until discovery has been completed and for the right to supplement her response if necessary. R. 98 at 3. While the Court gave Back additional time to file her response to Hall's motion and to complete discovery for the claims against Schrader, the parties agreed that discovery with respect to Hall's claims ended on November 15, 2009. *See* R. 74, 96, and 97. Further, the discovery period for Schrader's claims ended on January 15, 2010, and Back has not

R. 99.

## DISCUSSION

Qualified immunity bars Backs' political affiliation discrimination claim against Hall. To determine whether qualified immunity applies, a court must decide whether (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). As the Sixth Circuit has said, the right to be free from termination based on political affiliation is clearly established. *Back*, 537 F.3d at 556. Thus, the sole question is whether Back has shown a violation of her constitutional rights. She must, among other things, present evidence: (1) that Hall knew of her political affiliation, and (2) that her political affiliation was a "substantial" or "motivating" factor in Hall's decision to terminate Back. *Hall v. Tollett*, 128 F.3d 418, 425 (6th Cir. 1997); *Back*, 537 F.3d at 558 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Back has failed to present evidence of either prong.

## I.      Knowledge of Back's political affiliation

Back has provided no evidence that Hall knew or had reason to know that Back was a Democrat. Thus, Back failed to show that Hall's decision to terminate her was because of her Democratic affiliation. *See Hall*, 128 F.3d at 425 ("We find that plaintiff Hall has failed to set forth evidence that is sufficient to support a conclusion defendant knew or had reason to know

---

presented the Court with any evidence that she believes will alter the Court's decision on Hall's motion for summary judgment. Accordingly, both requests are denied as moot.

of her support for Avery York in the general election. Without such evidence, she has failed to raise a genuine issue as to whether she was fired in retaliation for her support for defendant's political opponents."); *see also Welch v. Ciampa*, 542 F.3d 927, 938-39 (1st Cir. 2008) (stating that the plaintiff must show the defendant has knowledge of her political affiliation to establish a prima face case of political discrimination (quoting *Martinez-Vélez v. Rey-Hernández*, 506 F.3d 32, 39 (1st Cir. 2007))). Back could have asked Hall a simple question in his deposition: Did you know Back was a Democrat? She did not. Moreover, Back made no effort in her response to cite *any* circumstantial evidence showing that Hall knew she was a Democrat. She even admitted in her deposition that she does not know whether Hall knew she was a Democrat. Back Dep. at 108 ("Q: Did Keith Hall at any time at the time of your termination even know, to your knowledge, that you were a Democrat?. . . A: No."). Because Back failed to show Hall knew she was a Democrat, he cannot be liable for terminating her on that basis.

## II.     "Substantial" or "motivating factor"

Even if Back had brought forth evidence that Hall knew or had reason to know she was a Democrat, she would have to show that her Democratic affiliation was a "substantial" or "motivating" factor in Hall's decision to terminate her. *Back*, 537 F.3d at 558 (citing *Mt. Healthy*, 429 U.S. at 287); *Conklin*, 834 F.2d at 546-47. None of the evidence Back cites demonstrates that Back's political affiliation was a "substantial" or "motivating" factor in Hall's decision.

Having no direct or circumstantial evidence that Hall terminated her in part or whole because of her political affiliation, Back attempts to paint Hall with guilt by association. In this

case, that does not work.  In particular, Back argues that her termination was part of a larger conspiracy in which Hall was a key member.  R. 98 at 13-14.  She points to:  a "hit list," the allegedly incriminating actions of Schrader and others, and Hall's interactions with the Fletcher administration.  For the reasons described below, none of the evidence to which she points—either when taken alone or collectively—suggests that Back's Democratic affiliation was a substantial or motivating factor in Hall's decision to terminate her.  Therefore, there is no material issue for the jury to decide.

### A.     The "hit list"

First, Back contends that the fact that members of KOHS were part of a "hit list" is evidence that her Democratic affiliation was a factor in her termination.  R. 98 at 13.  This argument fails.  The alleged "hit list" is a memorandum dated April 18, 2005 (almost three months after Back was fired).  R. 98, Ex. 1.  The memorandum lists names of people, their job titles with the Kentucky state government, and in some cases their political affiliation.  *Id.*  The "hit list"contain no employees from KOHS—only other state offices.[6]  Back is not even on the list.  If anything, the list is evidence that political affiliation may have been a decision in the termination decisions of other state employees in other offices.  The memorandum is not evidence that political affiliation was a factor in Hall's decision to terminate her.

Back did not bring any evidence to connect her or Hall to this list.  Back did not depose

---

[6]The "hit list" has only two references to KOHS:  (1) Cheryl Caldwell from the Office of the Secretary interviewed with KOHS, and (2) Cash Centers from the Office Transportation Operations Center was "[a]dversarial" with KOHS.  R. 98, Ex. 1 at 2-3.  Neither of these references indicates that anyone on the "hit list" worked at KOHS.

the individuals on that list to show that they were terminated because of their Democratic affiliation. *Cf. Conklin*, 834 F.2d at 547 (testimony of the plaintiff's co-worker stating that she was discharged for political activities is circumstantial evidence of political affiliation discrimination). She also did not show that Hall was involved in the terminations or at least in a management capacity in the department from which the individuals were released. Without more, this evidence of a "hit list" has no weight whatsoever. Hall cannot be held responsible for someone else's actions, because the plaintiff did not tie him to the list or the firings.

Back mentions, in passing, that another state employee, Mike Duncan, was terminated and also brought a civil action. R. 98 at 11 n.9 (citing *Duncan v. Nighbert*, No. 06-34 (E.D. Ky. Dec. 12, 2007)). Mike Duncan was on the "hit list" with his political affiliation listed. *See* R. 98, Ex. 1 at 1. However, neither Hall nor Schrader were defendants in Duncan's case. Back has done nothing to associate Duncan's claims with hers or Hall with Duncan's termination. Duncan was not even in KOHS. He was discharged while working in the Office of the Inspector General of the Transportation Cabinet. Thus, Duncan's case is not circumstantial evidence that Hall terminated Back because she was a Democrat.

Back also introduced into the record an email exchange from February 16, 2005, between Hall and Dan Druen ("Druen"), a Kentucky Transportation Cabinet official. R. 98, Ex. 3 at 19. In the exchange, Druen states that Governor Fletcher asked for a "list," and Hall responds that he would appreciate it if "frank" were at the top of the list.[7] *Id.* Back does not provide evidence

---

[7] The email refers to Governor Fletcher as "Sadie." Hall testified that this was the Governor's alias. Hall Dep. at 71-72. Back does not introduce evidence to the contrary—nor dispute this fact—so it will be presumed to be true. R. 98 at 10.

8

that connects that request to the alleged "hit list." There is no "frank" on the "hit list." In fact, Hall testified that "frank" was likely an underperforming Republican state employee. Hall Dep. at 73-74. As such, it is unclear if Governor Fletcher requested the alleged "hit list" or a list of underperforming employees. Moreover, there is no other evidence presented that Hall knew of the "hit list." Rather, Hall testified that he did not know of the "hit list." Hall Dep. at 69-71. Back could have—but did not—depose Druen to show that he was referring to the "hit list" in that email. Even if Back did show that Governor Fletcher asked for a "hit list," this request came a month *after* Hall terminated Back, and the "hit list" was dated three months after Back's termination. There is no evidence that the "hit list" relates to Back's termination.

She notes that a grand jury report resulted from the "hit list." R. 98 at 1. But that report does not implicate Hall in any way—directly or indirectly. *See* R. 98, Ex. 2 at 7-8. The report also does not state that Back or any other KOHS employee was terminated improperly. Instead, the report states that the first firing due to the "hit list" occurred in May 2005—four months after Back was terminated. *Id.* The report is actually evidence that the "hit list" conspiracy may have formed after Back was terminated but does not show Hall's involvement.

      B.      Actions of Schrader and others

Back testified that Governor Fletcher's office sent KOHS employment applications which asked applicants for merit jobs whether they were Democrats or Republicans. Back Dep. at 120. Obviously, it is inappropriate to ask an applicant for a merit job about his or her political affiliation. But Back does not present evidence that Hall was aware of these applications or that they were used after he became Executive Director of KOHS. Further, there is no evidence in

9

the record that Hall hired Back's replacement using an application that asked for the applicant's political party. Without such evidence, testimony regarding the applications does not show that Back's Democratic affiliation was a factor in Hall's decision to terminate her.

Back also testified that Schrader asked applicants about their political affiliation and used their affiliation as a means to eliminate applicants. *Id.* at 35-36, 51, 119-120. While that evidence may show that Schrader was interested in knowing people's political affiliation during hiring, Back fails to connect it to Hall's decision to terminate her. In fact, Back testified that Hall never interviewed applicants. *Id*. at 106-108. What Schrader asked about in interviews does not show that Back's membership with the Democratic party was a substantial or motivating factor in Hall's decision to terminate Back. Back did not even show that Hall was aware of Schrader's questions or whether the questions occurred while Hall was Executive Director of KOHS.

Back testified that Schrader preferred to give homeland security funding to Republicans and did not want to have Democrats on the committee that reviewed grant requests. *Id*. at 28; 35-36. None of these facts involve Hall. They all relate to Schrader's actions. Therefore, that is not evidence that Back's Democratic affiliation was a substantial or motivating factor in Hall's decision to terminate her.

Back also points out that KOHS officials looked at voter registries to make employment decisions. R. 98 at 13. Because Back does not cite to any evidence in the record to support this argument, it fails.

### C. Fletcher administration

Back asserts that the fact that Hall had regular contact with officials in the Fletcher administration indicted for a statewide hiring conspiracy is evidence that political affiliation was a factor in her termination. *Id.* at 13. Back does not cite the evidence she is referring to in making this argument. Presumably, Back is referring to emails between Hall, Druen, and Governor Fletcher. R. 98, Ex. 3. These emails, some already discussed, are not evidence that Hall terminated Back because she was a Democrat. In one email to Druen, Hall says that a new hire, Tracey Thurman, is a "good Republican." R. 98, Ex. 3 at 14. This email does not show that Hall fired Back because she was a Democrat. Indeed, it is unclear that Hall was even involved in the hiring of Thurman. If Back had shown that Hall was involved in the hiring of Thurman, then an inference could be drawn that Hall hired her because she was Republican. But Back did not show that Hall was involved in any hiring. Her testimony, in fact, stated the opposite. Back Dep. at 107 ("Q: Okay. Tell me what interview you sat in on where Keith Hall asked people their political affiliations. A: Keith Hall was not there during the interview process.").

Back points to an email from Druen on or around February 16, 2005, that states: "[t]his is another example of why we need to replace the holdovers; we just can't trust their loyalties." R. 98, Ex. 3 at 1. However, Back acknowledges that this email may not have gone to Hall. R. 98 at 10 n.8. The header of the email is cutoff so it is unclear who received the message. Further, Back did not cite any deposition testimony that confirms who, including Hall, was on this correspondence. This email is inadmissible since Back failed to authenticate it. *See* Fed.

11

R. Evid. 901(a); R. 99 at 3. Even if it were admitted, Hall did not make this statement. Thus, the statement does not allow for an inference that Hall made such statements. *Cf. Helwig v. Pennington*, 30 F. App'x 516, 520 (6th Cir. 2002) (holding that the defendants' retaliatory statements were circumstantial evidence of political affiliation discrimination). Simply receiving an email does not mean that one agrees with its contents.

Back also cites an email exchange between Druen and Hall on March 7, 2005. R. 98, Ex. 3 at 12. Druen forwarded an email to Hall in which Druen recommended launching an investigation into an allegation that a "hit list" of employees existed. *Id.* Hall responded with two words: "Great email." This is not evidence that Back's political affiliation was a factor in her termination. Hall testified that his response was meant to acknowledge that the communication was clear since Druen was not the "best writer in the world." Hall Dep. at 70-71. Back states that Hall's "Great email" response demonstrates that he did not take the investigation seriously. R. 98 at 9. That is speculation.

Back cites other evidence to show Hall was closely connected to the Fletcher administration. For example, Clarke, a Staff Assistant at KOHS, testified that Druen went to see Hall both before and after Druen was indicted. Clarke Dep. at 31-32. This fact does not affect the analysis here. There is nothing cited to indicate what Druen and Hall talked about during those meetings. Such meetings, even in combination with the other evidence presented, do not indicate that political affiliation was a factor in Back's termination.

Back mentions in her statement of facts that Hall's counsel instructed him not to answer certain questions during his deposition and that Hall often gave "evasive answers." R. 98 at 11.

It is unclear what Back hopes the Court will do with this testimony since Back did not request any relief during the discovery period to compel responses. In most instances, Hall's counsel appeared to be protecting his client from answering questions that relate to other litigation. Also, the "evasive" answers are not evidence that Hall knew Back was a Democrat or that he decided to terminate Back based on her Democratic affiliation.

In her response, Back also discusses the reasons that Hall claims he terminated Back. Among others, Clarke and Wilkerson indicated to Hall that Back performed poorly. R. 89 at 5-7. Back argues that the poor work performance reasons that Hall cites are merely pretext for political affiliation discrimination. R. 98 at 13. Apparently, neither Clarke nor Wilkerson had supervising authority over her. *Id.* at 5-8, 10. She contends that neither had knowledge of her work to comment on her performance. *Id.* The pretext argument, however, is not before the Court. To get to this argument, Back must first meet her burdens of presenting evidence that Hall knew she was a Democrat and that her political affiliation was a substantial or motivating factor in Hall's decision to terminate her. *Back*, 537 F.2d at 558. She has failed to meet either burden.

## CONCLUSION

Back did not make out a prima facie case of political affiliation discrimination. First, she did not show that Hall knew or had reason to know Back was a Democrat. Second, Back failed to establish with evidence that her Democratic affiliation was a substantial or motivating factor in Hall's decision to terminate her. Thus, without evidence of a constitutional violation, Hall is entitled to qualified immunity.

Accordingly, it is **ORDERED** as follows:

(1) Hall's motion for summary judgment, R. 89, is **GRANTED**.

(2) Hall is **TERMINATED** as a party to this litigation.

This the 18th day of February, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge