UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| LINDA WELLS BACK, | ) |
| Plaintiff, | ) Civil No. 06-05-ART |
| v. | ) |
| JOEL SCHRADER, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Linda Wells Back was a civil servant in the Kentucky Office of Homeland Security. While there, she made several statements—some constitutionally protected and others not. Since she cannot tie her constitutionally protected statements to her termination and defendant Joel Schrader has presented legitimate reasons for firing her, his motion for summary judgment must be granted.

### BACKGROUND

From February 2003 to January 2005, Linda Wells Back worked as a civil servant in the Kentucky Office of Homeland Security ("KOHS"). R. 55 at 1–2. All was well until Joel Schrader became KOHS Deputy Director. Back and Schrader had very different ideas about the way KOHS should award grants and hire employees.

In June 2004, KOHS Director Erwin Roberts asked Back to prepare a list of individuals to sit on KOHS's grant review panel. R. 136-1 at 8. When Back showed her list to Schrader, he removed several panelists because they were Democrats. *Id.* Back objected

and told Schrader that KOHS should not consider prospective panelists' political affiliations when forming its grant review panel. *Id.* at 8–9.

Once formed, the grant review panel scored the grant applicants. But, the panel did not have final say because KOHS executives—including Schrader—reviewed the panel's recommendations. *Id.* at 9. Back felt that the executive review of the panel's decisions was partisan and unlawful, and she voiced her concerns to coworkers. *Id.* at 9–10; R. 136-10 at 4–5; R. 143-2 at 5. And, when KOHS completed its list of approved grant and contract applications, Back protested that some of the office's funding decisions conflicted with federal regulations. Specifically, Back told Schrader that she did not believe KOHS could legally provide the Kentucky Department of Criminal Justice with money for vehicles. R. 136-4 at 89–95; R. 136-13 at 4. Back also told Schrader that KOHS could not use a particular vendor (IP MobileNet) for its state-wide mobile data system without competitive bidding. R. 136-4 at 118, 166; R. 136-13 at 4.

Back and Schrader also clashed over KOHS's hiring process. At first, Back and Schrader both participated in hiring interviews. But during one interview in July 2004, Schrader asked an applicant, Nina Parker, about her political affiliation. R. 136-1 at 8; R. 136-4 at 15. Later, Back told a coworker, Amy Andrews, that she believed Schrader's question was inappropriate. R. 136-4 at 60–61. Back was shut out of the hiring process after that, and she suspects that Andrews told Schrader about her concerns. R. 143-2 at 2.

In January 2005, KOHS leadership fired Back. *Id.* at 9. Back sued, alleging a number of constitutional and statutory claims. R. 1. Back's sole remaining claim is that Schrader fired her from KOHS in retaliation for her protected speech. Schrader has now moved for summary judgment. R. 136.

2

# ANALYSIS

To prove her First Amendment retaliation claim, Back must show (1) she made constitutionally protected statements; (2) her termination was an adverse action likely to chill a person of ordinary firmness from continuing to make protected statements; and (3) her protected statements were a substantial or motivating factor in KOHS's decision to fire her. *See Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011) (citation omitted). At the summary judgment stage, Back must demonstrate the existence of a genuine dispute of material fact on all three elements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). And, if she makes this showing, the burden shifts to Schrader to show that he would have made the same employment decision—termination—irrespective of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Back argues that she made several protected statements. First, Back objected to Schrader's use of political affiliation in composing a list of grant panelists. Second, Back raised concerns about the legality of particular funding decisions. Third, Back opposed the use of political affiliation in KOHS's funding and hiring decisions.

## I.    Composition of the Grant Review Committee

Back believes that the First Amendment protects her statement to Schrader that political affiliation was not an appropriate consideration in choosing KOHS grant panelists. She is incorrect.

Public employees do not shed their constitutional rights when they take up the mantle of government service. But to merit constitutional protection, Back's statement must meet three requirements. First, Back's speech must relate to a matter of public concern. Second,

3

Back's speech must have value that outweighs the state's contrary interest. Finally, Back cannot speak in the course of her official duties—put simply, as a part of her job. *See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337–38 (6th Cir. 2010) (synthesizing Supreme Court precedent). Neither party spills any ink on the first two prongs of this test. But Schrader argues that Back spoke pursuant to her official duties. And Back has not demonstrated a genuine dispute on this question.

How does one tell whether an employee is acting pursuant to her official duties? Not by examining just a formal list of duties. Instead, one must consider Back's actual duties, including all "ad hoc or de facto duties" that "owe their existence to her professional responsibilities." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007) (citing *Garcetti*, 547 U.S. 410, 425 (2006)). The question then becomes whether Back spoke as part of her job duties or for some other reason. To make that determination, one must look to the content and context of Back's speech, that is, "her employment duties, the impetus [and setting] for her speech, . . . the speech's audience, and its general subject matter." *Id.* at 546. Relevant considerations include whether the speech was made inside or outside the workplace, *Garcetti,* 547 U.S. at 420, and whether the employee spoke to a peer or a supervisor. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 542 (6th Cir. 2012); *but see Weisbarth*, 499 F.3d at 545 (stating that whether a plaintiff speaks pursuant to her job duties ultimately turns on the context of her speech). For example, when a deputy district attorney writes a memorandum recommending dismissal of a case because of governmental misconduct, her speech is made pursuant to her official duties. *Garcetti*, 547 U.S. at 421. But a teacher's letter to a local newspaper about her school district's funding decisions would

4

almost certainly fall outside her professional responsibilities. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 572 (1968).

Here, Back spoke to Schrader about her assignment to gather a list of panelists to score grant applications. R. 136-2 at 27–28. Back proposed a list of panelists, and then Schrader made some changes to that list. Back objected to those changes, arguing that they were based on unconstitutional considerations. So her speech was a complaint by an employee to her supervisor about his alterations to her work product. Such a complaint is made pursuant to the employee's duties. *See, e.g.*, *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 349 (6th Cir. 2010) (holding teacher's complaints to her supervisor about class size were made as a public employee even though teacher had no ultimate say about class size); *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 364 (6th Cir. 2007) (holding program administrator's complaint to supervisor about funding decisions were statements related to administrator's official duties).

Back makes several arguments to show that the comment was not part of her official duties. None are persuasive. First, Back argues that she did not speak as part of an investigation into KOHS practices. R. 143-2 at 22. But, as noted above, Back's speech still owed its existence to her professional duties. And a finding that an employee spoke as part of an investigation is not necessary for the Court to find the employee's speech unprotected. *See, e.g.*, *Weisbarth*, 474 F.3d at 365. Second, Back argues that her comments were "extraordinary rather than everyday communication." *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 768 (6th Cir. 2010). But the nature of her speech suggests otherwise. Back's statement to Schrader concerned Schrader's changes to one of her assigned projects. And Back voiced her concerns only to Schrader; she did not take her concerns to the public or to

5

Schrader's superiors. R. 136 at 1 ¶ 14; R. 143-2 at 15. To qualify as "extraordinary" communication, an employee must have done more than Back did here. *Compare Weisbarth*, 474 F.3d at 365 (concerns about legally actionable conduct, expressed only to direct supervisors, is not protected), *and Fox,* 605 F.3d at 350 (speech is unprotected "when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties"), *with Handy-Clay*, 695 F.3d at 542 (finding speech protected where the plaintiff spoke about funding concerns "to a number of individuals both inside and outside her department"). Thus, the First Amendment does not protect her complaints to Schraeder about the ultimate composition of the grant review committee.

## II.   Funding Decisions in Violation of Federal Regulations

Back next argues that she was protected from discipline when she told Schrader that KOHS's funding decisions violated federal regulations. R. 136-4 at 112-18 (using IP MobileNet as KOHS's sole source for mobile data equipment); R. 136-13 at 4 to (approving the Kentucky Department of Criminal Justice's application for new vehicles). But this speech was also part of her official duties. KOHS explicitly asked Back, as an experienced grants manager, whether it could purchase its communications equipment from IP MobileNet without competitive bidding. R. 136-1 ¶ 29, R. 143-2 at ¶ 25. And KOHS employees consulted Back in her professional capacity when they asked her whether she thought the office could fund the Department of Criminal Justice grant. R. 136-13 at 4. While Schrader did not follow Back's advice, she was fulfilling her professional responsibilities when she disagreed with his interpretation of the laws governing grant disbursement. *See Garcetti*, 547 U.S. at 421 ("[T]he fact that [the plaintiff was] fulfilling a responsibility to advise his

supervisor about how best to proceed . . . distinguishes [this] case from those in which the First Amendment provides protection . . . .").

Back argues that her job description does not require that she ensure her supervisor complies with the law. R. 143-2 at 22. But Back offers no evidence for this contention. *See* Fed. R. Civ. Pr. 56(c). And her resume explicitly states that her job duties include "completing analysis of various grant applications, [including] governing regulations . . . and eligibility requirements." R. 145-12 at 1. Back was also tasked with "monitoring Office expenditures to assure accuracy and compliance with approved budget . . . ." *Id.* Despite her *post hoc* protestations, Back's own descriptions of her job establish that her professional responsibilities included opining on the legality of grant funding. Therefore, her statements are not protected.

### III. Political Affiliation in Funding and Hiring Decisions

Finally, Back argues that the First Amendment protects her from discipline based on her complaints about KOHS executives changing the list of approved applications and Schrader asking a job applicant about her political beliefs. R. 143-2 at 10. Neither of these statements was made as part of Back's official duties. She was not involved in scoring grant applications, R. 143-2 at 22, and her comments to a co-worker about Schrader's conduct in an interview arguably had nothing to do with her job.

This, however, does not end the inquiry. Assuming Back could link this speech to her termination—which is difficult at best because Schrader fired her months after her speech,[1]

---

[1] The only evidence connecting any of Back's statements to Schrader's decision to fire her is the temporal proximity between those statements and her termination. R. 143-2 at 24; R. 147 at 17–18. But only "extremely close" temporal proximity can link an employee's protected conduct to an employer's adverse action; generally plaintiffs must present more than

7

and because there is scant evidence that Schrader knew about her speech[2]—Schrader can still prevail by demonstrating that he would have fired Back for reasons besides her protected speech. *Langford v. Lane*, 921 F.2d 677, 680 (6th Cir. 1991) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Schrader offers a wealth of evidence that he fired Back for poor job performance. Eleven coworkers testified that Back performed her job poorly. *See, e.g.*, R. 136-14; R. 136-15; R. 136-16; R. 147. According to their testimony, Back had trouble working with others, worked slowly, and turned in sloppy work. R. 136-4; R. 136-5; R. 136-6.

Instead, Back offers several reasons that the Court should discount their affidavits and find a genuine factual issue exists as to whether she was fired for legitimate reasons. But none of her proffered reasons demonstrates that a genuine issue exists.

---

temporal proximity to prove a causal link. *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). Back's statements (in the Summer and Fall of 2004) were not extremely close to her January 2005 termination. R. 143-2 at 4, 19-24; R. 147-1 at 1; *see, e.g., Handy-Clay*, 695 F.3d at 546. Back argues that Schrader would have fired her "well before" January 2005, except that Back was the only KOHS employee who had access to the eGrants online system and knew how to request the 2005 grant funds. R. 143-2 at 24. As evidence, Back notes that Schrader fired her the day after she requested the grant funds. *Id.* Schrader argues that Back's argument is speculative. R. 147 at 17. The Court need not decide this question since Schrader has shown he had legitimate reasons to fire Back.

[2] Back did not present any evidence that Schrader knew she complained about the executive review of the grant committee's decisions. She complained to her coworkers, but she has offered no facts to show that they told Schrader about her complaints. *See* R. 145 at 21. So right from the start those comments cannot serve as a hook on which to hang a retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) ("[T]he defendant must have known about the protected activity in order for it to have motivated the adverse action."). And Back's allegation that Schrader fired her because she objected to his use of political affiliation in KOHS hiring dangles from a slender thread of inference—Back speculates that Andrews told Schrader about her remark because afterwards Schrader excluded Back from the hiring process. R. 143-2 at 10.

First, Back argues her eleven coworkers are wrong and she was a valued employee. Her evidence? Two complimentary emails she received in June and October of 2004. The June 2004 email from Schrader thanked Back and others for their work on a conference. 145-4. Roberts sent the second email and thanked Back for her hard work. R. 145-7. But neither of these emails refutes her co-workers allegations that she had trouble meeting deadlines, that other grant managers frequently had to assist Back with her work, and that her work often included mistakes. R. 136-15; R. 136-16. Moreover, both emails significantly predate her termination.

Second, Back points to her positive work evaluations before she arrived at KOHS, while she was at KOHS, and after she left KOHS. R. 143-2 at 25–26; R. 147 at 19-20. Her evaluations before and after her time at KOHS do not speak to her coworkers' criticisms of her job performance. So these evaluations do not create a genuine issue of material fact as to whether Schrader fired her for poor job performance. Back does include one evaluation from August 2004 that discusses her work as a KOHS Grants and Contracts Administrator. But from September 2004 until her termination, Back was a KOHS Internal Policy Analyst III. R. 55 at 1–2. And Back's evaluation does not speak to her performance in this position, which involved greater responsibilities. R. 145-9 at 4. Moreover, the supervisor who evaluated Back noted that she was transitioning to a new position, and that in this position she should focus on initiative, communication, and teamwork. *Id.*; *see also* R. 136-14 at 2 (noting that Roberts advised Back that she needed to work on these areas). But her coworkers' affidavits make clear that all three areas remained problematic for Back. R. 136-14; R. 136-15; R. 136-16. By the time Schrader fired Back, she was unable to work with other grant team members, failed to communicate with others, did not ask for help when

9

needed, and was very slow to respond to questions from grant applicants. R. 136-14; R. 136-18. So Back's one KOHS evaluation involving a different job does not rebut the wealth of evidence that Back's performance as an Internal Policy Analyst was not up to KOHS standards.

Third, Back provides evidence that she took computer-training courses to rebut the charge that she had trouble with KOHS software. R. 143-2 at 26. But Back's problems at work extended beyond technical difficulties. Back's coworkers complained that she missed deadlines, put forth minimal effort, and worked poorly with others. R. 136-4; R. 136-5. So evidence that Back tried to make up for her technical shortcomings does not refute the bulk of Schrader's proof that he fired Back for her poor job performance.

The rest of Back's responses are irrelevant since they do not address the quality of her work at KOHS. Back contends that that KOHS management testified inconsistently about who recommended her termination, and that KOHS's failure to give a reason for her termination on an administrative document makes her firing suspect. R. 145. But Back never explains how these facts are relevant to the question of whether her performance warranted termination. Back also alleges that no one told her she was performing poorly. R. 145 at 25; *but see* R. 136-14 at ¶ 6 (Director Roberts noting that he met with Back and advised her of several issues with her work). But Back was an at-will employee, so Schrader was not required to give her warning before her termination or reasons afterwards. R. 136-1 at 32.

In the end, none of Back's arguments either alone or taken together rebut Schrader's legitimate reason for terminating her. As such, they do not create a genuine issue of material

10

fact and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VI. Qualified Immunity

Schrader also raises a qualified immunity shield against Back's claims. But since Back's substantive retaliation claim does not survive summary judgment, the Court need not decide whether qualified immunity would provide an additional basis for summary judgment.

## CONCLUSION

It is therefore **ORDERED** that Schrader's motion for summary judgment, R. 136, is **GRANTED**. The Court will enter a separate judgment.

This the 4th day of December, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge